IN THE UNITED STATES DISTRICT COURT
FOR THE EASTER DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| GUY RICHARDS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CASE NO. 9:14-CV-00136 |
| | § | |
| VS. | § | |
| | § | |
| | § | |
| LUFKIN INDUSTRIES, INC., | § | |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM ORDER ON DEFENDANT'S MOTIONS TO
<u>EXCLUDE PLAINTIFF'S EXPERT TESTIMONY</u>**

In accordance with 28 U.S.C. § 636 and the Local Rules for the United States District Court for the Eastern District of Texas, the above-captioned civil action is referred to the undersigned United States Magistrate Judge for determination of non-dispositive pretrial matters. Now pending before the Court for the purposes of this order is the Defendant Lufkin Industries, Inc.'s *Motion to Exclude the Opinions and Testimony of Plaintiff's Expert Sandra K. Lauro* (doc. #92) and *Motion to Strike Amended Expert Report of Plaintiff's Expert Samuel Kyle Jones* (doc. #91).

**I. Background**

The Court has already explained the factual and procedural background of this case in detail (*see, e.g., Report and Recommendation*, doc. # 157) in numerous prior rulings. The Court refers to those filings and incorporates the background information set out therein as part of this order. The undersigned will merely summarize the issues before the Court in the pending expert motions.

1

A  The Motion to Exclude Sandra K. Lauro's Testimony

The Plaintiff, Guy Richards ("Plaintiff" or "Richards"), designated Ms. Lauro as an expert witness to offer "her opinion about whether Lufkin Industries, Inc.,…exercised reasonable care to prevent and correct racial harassment and retaliation as it relates to the specific allegations in this lawsuit." *See Lauro Report, Exhibit A to Defendant's Motion to Exclude* (doc. #92-1), at p. 2.  Ms. Lauro is an employment attorney specializing in advice, training, and consulting relating to federal and state labor and employment law compliance and contractual issues.  *See Lauro's Curriculum Vitae* (doc. # 92-1), at p. 9.

In its motion, Lufkin Industries, Inc. ("Lufkin" or "Defendant") argues that the Court should strike Ms. Lauro's testimony because it is the job of the Court and the jury – not an expert – to determine whether Lufkin exercised "reasonable care" based on the evidence presented.  *See Motion to Exclude*, at p. 1.  Lufkin further contends that Ms. Lauro's opinion should be excluded because she is testifying as an employment attorney and her testimony does not present scientific or statistical expertise.  *Id*.  Lufkin asserts that not only should her testimony be excluded because she will be testifying on a subject matter within the common knowledge of the jury, but also because her report contains misstatements and mischaracterizations and her conclusions are unreliable.  *See id*.  at p. 2.

Richards responded to the motion to exclude (doc. #109).  He argues that if the Court excludes Lauro's testimony, the defendant will benefit from having five former employees testify who are human resources experts.  *See Response*, at p. 1.  He contends that the jury would be helped by the testimony of a well-qualified human resources expert who is not bound to Lufkin.  *Id*.  at p. 2.  Plaintiff notes that Lufkin does not take issue with Ms. Lauro's qualifications.  *Id*.

Richards also argues that human resources experts are permissible in employment discrimination cases. *Id*. at pp. 2-3. He further contends that the Court and counsel have the ability at trial to guard against Ms. Lauro rendering an impermissible legal conclusion through tailoring the questioning. *Id*. at p. 4.

The parties also submitted additional briefing related to Lufkin's request to exclude Ms Lauro's testimony. *See Reply, Sur-Reply and Sur-Sur-Reply* (doc. #s 112, 116, 121). The Court has reviewed those filings but will not take the time to summarize them here. The undersigned will instead refer to them as necessary in the course of its analysis below.

B. The Motion to Strike Samuel Kyle Jones' Amended Expert Report

Dr. Jones is a professor of finance at Stephen F. Austin University. *See Jones' Curriculum Vitae, Exhibit A to Motion to Strike* (doc. #91-1). Lufkin does not dispute his qualifications, but instead takes issue with his methodology in calculating Richards' claimed medical expenses. *See Motion to Strike*, at pp. 2-4. Lufkin also argues that Jones' Amended Report should be stricken because he failed to consider Richards' duty to mitigate his damages by obtaining other insurance or subsidizing with Medicaid. *Id*. at pp. 5-6. Defendant relatedly contends that Jones' report is erroneous because it assumed that Richards would still have been employed through July 2016 in calculating his damages. *Id*. at p. 6.

Plaintiff responded to the motion to strike (doc. #108). As Lufkin also acknowledges in its briefing (*See Re*ply, at p. 1), Richards points out that Lufkin's motion only seeks partial exclusion of Jones' testimony – specifically the valuation of lost insurance payments and Richards' medical expenses that would have been covered by insurance *See Response*, at pp. 1-2. Plaintiff argues that the method utilized by Dr. Jones is consistent with the law in the Fifth Circuit governing the value of lost insurance. *See id*. (collecting citations). Richards also contends that Jones explained

his methodology in both his Amended Report and deposition, and that said methodology is reliable. *Id.* at pp. 3-4. He goes on to respond by stating that Lufkin's argument as to Medicaid reimbursement is misplaced because seeking Medicaid payment would have been the responsibility of any provider, not Richards. *Id.* at p. 5. Richards therefore contends that he did not fail to mitigate his medical expenses insofar as he received medical services that should have been covered by Medicaid. *See id.* Finally, Richards contends that Dr. Jones testimony should not be stricken for his failure to consider certain information – including the relevant medical plan – because Lufkin failed to produce this information in discovery. *Id.* at pp. 6-7.

Lufkin filed a brief reply (doc. #113) in support of its motion, and Plaintiff in turn filed a sur-reply (doc. #117). As indicated above, the Court has considered these briefs and the arguments contained therein but will not restate them here for the sake of brevity.

**II. Discussion**

A. Applicable Legal Standards for Considering the Admissibility of Expert Testimony

The admissibility of expert evidence is a procedural issue governed by Federal Rule of Evidence 702 and *Daubert*. *See Wells v. SmithKline Beechum Corp.*, No. A-06-CA-126-LY, 2009 WL 564303, at *7 (W.D. Tex. Feb. 18, 2009), *aff'd*, 601 F.3d 375 (5th Cir. 2010)(citing *Cano v. Everest Minerals Corp.*, 362 F. Supp. 2d 814, 821 (W.D. Tex. 2005); *see also generally Daubert v. Merrell Dow Pharmaceuticals, Inc*. 509 U.S. 579 (1993). Federal Rule of Evidence 702 sets forth the requirements that must be satisfied to enable a witness designated as an expert to testify to his or her opinions. An expert may testify in the form of an opinion or otherwise if: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably

applied the principles and methods to the facts of the case. *See* FED. R. EVID. 702. The Supreme Court in *Daubert* directed the district courts to use Rule 702 to function as gatekeepers when evaluating the admissibility of scientific evidence and determining whether expert testimony should be presented to the jury. *See Daubert*, 509 U.S. at 591-93. The proponent of the expert testimony "must prove by a preponderance of the evidence that the testimony is reliable." *Pittman v. Gen. Nutrition Corp.*, No. CIV.A. H-04-3174, 2007 WL 951638, at *3 (S.D. Tex. Mar. 28, 2007)(citing *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001)). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under Fed. R. Evid. 702 ." *Id*. at * 3 (quoting *Munoz v. Orr,* 200 F.3d 291, 301 (5th Cir.2000), *cert. denied,* 531 U.S. 812, 121 S. Ct. 45, 148 L. Ed. 2d 15 (2000)).

The Supreme Court extended this gatekeeping function from the admissibility of scientific evidence to include the admissibility of all expert testimony. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151-2 (1999). In *Kumho Tire*, the Supreme Court outlined the factors for admitting expert testimony as the following: (1) the expert is qualified; (2) the evidence is relevant to an issue in the case; and (3) the testimony is reliable. *Kumho Tire*, 526 U.S. at 153-4; *see also Daubert*, at 589, 590-91 (in order to be admissible, expert testimony must not only be relevant, but reliable).

In deciding whether to admit exclude expert testimony, the Supreme Court has offered a non-exclusive list of factors for courts to use in evaluating the validity or reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally

accepted in the relevant scientific community. *Daubert,* at 593–94; *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 244 (5th Cir. 2002). These factors are not necessarily limited to scientific evidence and may be applicable to testimony offered by non-scientific experts, depending on the circumstances of the case. *Kumho Tire*, 526 U.S. at 150. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Metzler v. XPO Logistics, Inc.*, No. 4:13-CV-278, 2014 WL 7146108, at *1-2 (E.D. Tex. Dec. 15, 2014)(Mazzant, J.)(quoting D*aubert,* 509 U.S. at 594); *see also Watkins v. Telsmith, Inc.,* 121 F.3d 984, 989 (5th Cir. 1997)(*Daubert* analysis for both scientific and non-scientific experts focuses on the reasoning or methodology, not the ultimate conclusion). The *Daubert* factors are not "a definitive checklist or test" and the *Daubert* framework is a "flexible one." *See id.* at *2. Citing *Daubert*, at 593-94; *see also Dearmond v. Wal-Mart Louisiana LLC*, 335 F. App'x 442, 445 (5th Cir. 2009).

The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kumho Tire,* 526 U.S. at 150–51. Often courts review the expert reports before ordering exclusion of expert testimony for lack of reliability, relevance, or qualification. *See , e.g., Sparling v. Doyle*, No. EP-13-CV-323-DCG, 2015 WL 4528759, at *26 (W.D. Tex. July 27, 2015); *Charles v. Sanchez*, 2015 WL 808417 at *10 (W.D. Tex. Feb. 24, 2015); *Little v. Technical Specialty Products, LLC*, 940 F. Supp. 2d 460, 468 (E.D. Tex. 2013) (Mazzant, J.).

In any event, the Supreme Court has not set forth a specific degree of reliability required or the manner in which the district courts must determine reliability of expert testimony. *See Kumho*, 526 U.S. at 152. The Court has "considerable leeway deciding in a particular case how to go about determining whether particular expert testimony is reliable … and the same kind of latitude in decidin*g* how to test an expert's reliability." *Id.* Not every guidepost outlined in *Daubert*

will necessarily apply. *See Watkins*, at 988-89. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *Metzler*, 2014 WL 7146108 at *2 (citing *St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir.2000)). A trial court, therefore, has wide latitude in deciding whether to exclude an expert's testimony. *See Kumho Tire*, 526 U.S. at 152. Moreover, the rejection of expert testimony is the exception rather than the rule. *Eagle Oil & Gas Co., v. Travelers Prop. Cas. Co. of Am.*, No. 7:12-cv-00133-O), 2014 WL 3744976, at *3 (N.D. Tex. July 30, 2014) (quoting FED. R. EVID. 702, adv. Comm. Notes (2000)). The trial court's gatekeeper role is not intended to serve as a replacement for the adversary system. *Id*.

B. Application: Expert Opinion of Sandra K. Lauro

There appears to be no dispute that Ms. Lauro is qualified in the field of employment law. The issue thus becomes whether her expert opinion regarding Lufkin's exercise of reasonable care in this case is reliable and admissible to the extent that it will permissibly aid the trier of fact.

Other courts have allowed experts to testify on issues related to the quality or propriety of a defendant's employment practices. *See, e.g., Gonzalez v. Conoco, Inc.*, No. H-98-3109, 1999 WL 1043756, at *3 (S.D. Tex. Oct. 15, 1999). Such expert opinions are not admissible, however, concerning the state of mind or motives of the defendant's officers and agents because issues of motive or intent must be assessed by the jury. *Gonzalez*, at *3. There is also no dispute that expert testimony on legal questions is generally impermissible. *Id*. Citing *Askanase v. Fatjo*, 130 F.3d 657, 672-73 (5th Cir. 1998). Experts cannot offer testimony regarding what law governs a dispute or what the applicable law means, because that is a function of the Court. *Little v. Technical Specialty Prods., LLC*, 940 F. Supp. 2d 460, 467-68 (E.D. Tex. Apr. 15, 2013)(Mazzant, J.)(citing *Fisher v. Halliburton,* No. H05–1731, 2009 WL 5216949, at *2 (S.D.Tex. Dec. 21, 2009);

7

*Goodman v. Harris Cnty.,* 571 F.3d 388, 399 (5th Cir.2009)). Allowing an expert to give an opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant. *Id*. at 468 (quoting *Owen v. Kerr–McGee Corp.,* 698 F.2d 236, 240 (5th Cir.1983)). In addition, an expert should not be permitted to give opinions that reiterate what the lawyers offer in argument. *Id*. Citing *Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir.1992).

The Court notes that Federal Rule of Evidence 704(a) provides that "an opinion is not objectionable just because it embraces an ultimate issue." However, Rule 704 does not open the door to all opinions. *Owen,* 698 F.2d at 240. The rule is not intended to allow expert witnesses to give legal conclusions or tell the jury what result to reach. *Little*, at 468 (citing *Owen*, at 240).

After a review of Ms. Lauro's expert report and her deposition testimony, the Court finds that a large part of her opinion does indeed assert impermissible legal analysis and conclusions. Much of her report involves analyzing the facts of the case and reaching the conclusion that Lufkin's actions were "inadequate" and "not consistent with standards of reasonable care or best practices in this area." *See Lauro Report*, at pp. 1-2. These types of conclusions invade upon the purview of the court and direct the jury what result to reach, both of which are improper.[1]

Furthermore, Lauro's legal conclusions about Lufkin's actions as drawn from the evidence in the case do not aid the trier of fact by applying some specialized knowledge or training. They could just as easily be argued to the jury by the attorneys in presenting their respective cases. Ms. Lauro's specific testimony about Lufkin's reasonableness of care addresses subject matter which invades the province of the jury, which is capable of deciding on its own Lufkin's motivations and

---

[1] Other examples include conclusions such as "it is my opinion that Lufkin's efforts to prevent and correct racial harassment and retaliation as it relates to Mr. Richards were in many respects inadequate and lacking in reasonable care;" "it is also my opinion that Lufkin did not at times adequately scrutinize the treatment of Mr. Richards after he reported racial harassment in March of 2011. . ."; "it is my opinion that Lufkin's actions were often inadequate and not consistent with best practices to correct on-going racial slurs and hostility directed toward Mr. Richards." *See Lauro Report*, at pp. 2-3.

the propriety of Lufkin's actions given the applicable legal standards to be instructed by the Court.[2] *See Pittman*, 2007 WL 951638, at *3(citing *United States v. Willey*, 57 F.3d 1374, 1389 (5th Cir. 1995) and quoting *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986)("Trouble is encountered only when the evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense within the common knowledge of the jury and is, therefore, improper.")) All of Lauro's opinions which state legal conclusions and findings specifically about the appropriateness or reasonableness of Lufkin's actions based on the evidence in this case should be excluded.

Plaintiff argues that he will be disadvantaged if Lauro's testimony is stricken because he will not be allowed the opportunity to present a witness with a human resources background, while Lufkin will be presenting at least five former employee witnesses with careers in human resources. This argument is misplaced. The witnesses presented by Lufkin are lay witnesses who should not be offered for purposes of providing expert testimony and instead will be giving testimony about the incidents in question in Mr. Richards' case. Lay witnesses are not permitted to testify on matters within the scope of Federal Rule of Evidence 702, which governs expert testimony. *See* FED. R EVID. 701 (governing opinion testimony by lay witnesses) and 702 (governing expert testimony). Plaintiff's alleged disadvantage in this regard is not relevant to the inquiry on the admissibility of Lauro's expert testimony in and of itself.

The Court does find, however, that a portion of Lauro's expert testimony is admissible. A segment of her report addresses Lufkin's written policies related to workplace harassment and she

---

[2] Examples include "[s]ome actions even suggest that members of management and investigators exhibited an attitude of permissiveness toward the term 'n*gger' in the workplace as directed toward Mr. Richards"; "Lufkin's actions to investigate and correct [Richards'] concerns were inadequate in many respect"; "[i]n my opinion, the statements of Mr. Milstead, Mr. Baker and Mr. Richards after he raised legitimate concerns . . . . does not demonstrate the standards of quality that are reflective of an objective or corrective practice in this area." *See Lauro Report*, at pp. 2-3.

offers an opinion as to whether those policies comport with EEOC recommendations. *See Lauro Report*, at pp. 1-2. She also renders opinions about the sufficiency of the training received by human resources employees at Lufkin. *Id*. This line of analysis does not draw legal conclusions specific to the facts of the case but rather offers opinions on a specialized area of employment practices outside of the common knowledge of a juror. As stated above, courts have permitted experts to testify on the quality of a company's policies, procedures, and employee management *See, eg.,Gonzalez, supra*, and *Pittman*, at *4 (allowing opinions grounded in personnel expertise which would assist the jury's determination).

Based on the foregoing, Lufkin's request to strike the expert testimony of Sandra K. Lauro will be granted only in part. In sum, she may testify about Lufkin's policies and procedures as compared to prevailing human resources standards and about the qualifications of Lufkin's employees and agents in rendering personnel decisions in light of the governing standards. Any opinion stating legal conclusions and/or factual determinations drawn from the evidence in this case (as more specifically described above) should be stricken. In turn, the testimony of Lufkin's rebuttal human resources expert should be limited in scope to the subjects specified above relating to Lufkin's policies, procedures and human resources personnel.

C. Application: Dr. Jones' Amended Report

As stated above, the defendant does not dispute that Dr. Jones is qualified as an expert on economic valuation. Lufkin's motion is limited to the reliability of Jones' Amended Report and the methodology used by Jones in reaching his conclusions on damages resulting from medical expenses.

Dr. Jones prepared his amended report for purposes of determining the present value of Mr. Richards' lost compensation resulting from Lufkin's termination of Richards on December 7,

2012. *See Amended Economic Analysis and Expert Witness Report of the Value of Lost Compensation ("Jones Amended Report"), Exhibit A to Lufkin's Motion to Strike* (doc. #91-1), at p. 2. A review of Jones' Amended Report shows that Jones assumes Richards would have remained employed with Lufkin until July 1, 2014, when he became disabled. *Id.* at p. 3. Jones accordingly estimated lost wages and benefits, excluding insurance, for the partial month of December 2012 through the end of June 2014. *Id.* From July 2014 through July 2016, Jones' included medical expenses incurred by Richards that would have been covered by earned health insurance if Richards had not been terminated. *Id.* These medical expenses total $974,515.92. *Id.* Taking that amount into account, Jones estimated lost earnings for Richards from Lufkin (including wages, benefits excluding insurance, and medical expenses incurred) totaling $1,140,962.12. *Id.* at p. 4.

Jones states that he then subtracted Mr. Richards' interim earnings from the estimated lost earnings from Lufkin Industries. *Id.* He also estimated benefits as 35% of total interim earnings, "using the average benefit rate for private industry workers in production, transportation, and material during this period, according to Bureau of Labor Statistics data, as was done in estimating the value of benefits Mr. Richards would have earned at Lufkin Industries if he had not been terminated" *Id.* Interim wages and estimated benefits are then combined to get total earnings. *Id.* From December 2012 to July 2016, Jones' estimate of Mr. Richards' interim lost earnings totals to $20,782.62. *Id.* Jones then subtracts from his estimate of the lost earnings from Lufkin Industries, resulting in estimated lost earnings of $1,120,179.50 resulting from the termination, not including interest. *Id.*

Lufkin's motion takes issue with a change in this methodology from Jones' initial report in which he based his analysis on the employer's premium costs in contrast to the updated

methodology based on actual medical expenses. As Lufkin admits, Dr. Jones is entitled to change and supplement his expert opinion within the applicable deadline to do so. *See* FED. R. CIV. P. 26(a)(2)(governing expert disclosures). The Court disagrees with Lufkin's contention that Jones failed to explain what principles support his conclusions. To the contrary, his Amended Report sets forth a detailed explanation for his analysis, as quoted in part above, and at his second deposition, he explained the valuation as based on occurrence of the insured risk as opposed to valuation by reference to the employer's estimated cost of premiums and his reasons for altering his conclusions based on Mr. Richards' medical records. *See Jones Amended Report*, at pp. 3-5 and *October 28, 2016, Deposition of Dr. Jones, at 20:20-21:21, Exhibit A to Plaintiff's Response* (doc. #108-1). The undersigned finds that this sufficiently meets the necessary threshold for reliability under *Daubert* and Rule 702. The Court is required to focus on the expert's principles and methodology, not on the ultimate conclusion. *See Little*, 940 F. Supp. 2d at 467 (quoting *Daubert*, 509 U.S. at 594). Jones thoroughly explains his reasons for altering his opinion in regard to medical costs incurred versus the employer's premium costs, and cites outside data (Bureau of Labor Statistics) as well as explains his method of analysis. While his Amended Report may reach a conclusion with which Lufkin is not content, its attacks on the methodology are without merit. Jones sufficiently cites his methodology, the information underlying his methodology, and the link between the information and his ultimate conclusion. *See Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 355 (5th Cir. 2007). The Court accordingly finds Dr. Jones' Amended Report to be admissible on this issue.

Lufkin also contends that Jones' Amended Report should be stricken because he does not take into account that Richards could have obtained insurance, including subsidized Medicaid; because he assumes that Richards would have remained employed; and he fails to take features of

a medical plan – copays, deductibles, and coinsurance into account. As for the last of these issues, Dr. Jones explained his analysis as it related to the features of a medical plan at his deposition, as noted above.

A Title VII plaintiff has a duty to mitigate damages in order to be entitled to a back pay award, but the employer does have the burden of proving failure to mitigate. *See Ellerbrook v. City of Lubbock*, 465 F. App'x 324, 446 (5th Cir. 2012) (citing *Sellers v. Delgado Coll.,* 902 F.2d 1189, 1193 (5th Cir.1990)). The plaintiff's duty to mitigate, however, is specific to using reasonable diligence to obtain substantially similar employment after termination. *See Oldman v. Albertson's LLC*, No. 3:13-CV-3799-P, 2015 WL 12562987, at *2 (N.D. Tex. May 21, 2015). In proving a failure to mitigate, the employer may demonstrate that substantially equivalent work was available and that the plaintiff did not exercise reasonable diligence to obtain it. *Id*. Citing *Buckingham v. Booz Allen Hamilton, Inc.,* No. 4:13-CV-392, 2014 WL 5515211, at *2 (S.D. Tex. October 31, 2014) (citing *Sellers*, at 1193).

Jones' analysis takes into account that Richards became permanently disabled on July 1, 2014. Lufkin contends that Richards should have gone out and obtained Medicaid coverage at that time and Jones' analysis is accordingly flawed because he failed to consider this in determining back damages. This is a tenuous argument, and Lufkin offers no case law or peer-accepted methodology specifically on point mandating that the failure to obtain Medicaid must be taken into account when considering mitigation of back pay damages. Jones explained why he based his analysis on medical expenses incurred versus the cost of premiums. The Court finds this sufficient. The court's role in admitting or excluding expert testimony is not meant to replace the adversary system. *Oldman*, at *4. In general, "[q]uestions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left

for the jury's consideration." *Id*. Quoting *Viterbo v. Dow Chem. Corp.,* 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. Quoting *Daubert* 509 U.S. at 596. The Court has determined that Jones' opinion meets the necessary reliability requirements. Lufkin will have the opportunity to cross-examine Dr. Jones and present contrary evidence to attack the purported errors and lack of thoroughness in his analysis at trial. For purposes of the Court's analysis in determining the admissibility of Dr. Jones testimony, the Court finds Lufkin's motion to strike to be without merit for the reasons stated herein.

### III. Conclusion and Order of the Court

The Court **ORDERS** that the Defendant's *Motion to Exclude the Opinions and Testimony of Plaintiff's Expert Sandra K Lauro* (doc. #92) is **GRANTED in PART and DENIED in PART** as explained in detail and subject to the Court's instructions, set out above in this order. The Court further **ORDERS** that *Defendant's Motion to Strike Amended Expert Report of Plaintiff's Expert Samuel Kyle Jones* (doc. #91) is **DENIED**

**SIGNED this the 28th day of September, 2017.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE