** NOT FOR PRINTED PUBLICATION **

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| GUY RICHARDS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION No. 9:14-cv-136 |
| v. | § | |
| | § | JUDGE RON CLARK |
| LUFKIN INDUSTRIES, INC., | § | |
| | § | JJB |
| *Defendant.* | § | |

## Memorandum Opinion

Plaintiff Guy Richards ("Plaintiff"), who is African-American, brought Title VII and 42 U.S.C. § 1981 claims against his former employer, Defendant Lufkin Industries ("Defendant"), for racial harassment, racial discrimination, and retaliation. During jury selection, Defendant used all three of its peremptory strikes against African-American members of the venire. The court rejected Plaintiff's challenge as to two of venire members and sustained the challenge as to the third, who was selected for the jury. This Memorandum Opinion clarifies the basis for the court's reasoning, as stated on the record, for its rulings.

## Background

As part of the jury selection process, all 50 potential jurors completed a juror questionnaire that asked for background information, including employer information, and whether they had an employment or business relationship with "Lufkin Industries" or "General Electric," Defendant's current owner. This is more jurors than are usually called for a civil case, but Lufkin Industries

1

has been one of the largest employers in the area, so there was a potential for many disqualifications.

The parties agreed that all jurors who indicated that they or their spouses were currently employed by Lufkin Industries or General Electric would be excused without questioning. Prospective jurors who answered either "Lufkin Industries" or "General Electric" to the question "Last Employer," or with whom the parties had a concern about a potential connection to either company, were questioned individually outside the presence of the panel.

After the completion of the preliminary individual voir dires, two prospective jurors were excused without objection and one was struck for cause. The parties then conducted a general jury voir dire and were allowed to ask questions of all prospective jurors. After the general jury voir dire, the court allowed further individual questioning, outside the presence of the panel, of seven prospective jurors based on their answers to the questions asked during the general voir dire. At the conclusion of this second round of individual questioning, the court asked the parties to submit their strikes. Defendant used all of its peremptory challenges to strike three of the four remaining African-American prospective jurors: Juror #1, Juror #10, and Juror #15.

After the parties submitted their strikes, the Deputy Clerk prepared and provided the list of jurors to be seated to all counsel. Before the panel was brought back into the courtroom, the court read the jury list to all counsel and asked if there were any objections from Plaintiff's counsel. Plaintiff's counsel failed to respond. The court then asked Defendant's counsel if there were any objections to the jury list, and Defendant's counsel responded, "No, your Honor." The court then asked Plaintiff's counsel two additional times if Plaintiff had "some problem with the strikes." Plaintiff's counsel responded, "No. No problem."

Following this exchange, the ten selected jurors were brought back into the courtroom and seated in the jury box. After the remaining jury venire had also returned to the courtroom, the court explained to everyone the importance of jury duty and the reason so many were called to select a ten member jury and thanked the jury venire for its time. The court then dismissed the jury venire and asked the ten member jury to stand to be sworn. As the jury venire started to leave the courtroom and as the jurors stood to be sworn in, Plaintiff's counsel—in the presence of the jurors and the jury venire—approached the bench and asked, "Am I required to make a *Batson* challenge now?" The court immediately asked the jury venire to come back into the courtroom. Fortunately, no prospective juror had left the courthouse, and the jury venire was promptly brought back into the courtroom. The court then recessed with counsel to chambers to discuss this matter.

## **Analysis**

As an initial matter, Plaintiff's *Batson* challenge was untimely. *See U.S. v. Abou-Kassem*, 78 F.3d 161, 167 (5th Cir. 1996) ("A *Batson* objection must be made before the venire is dismissed and before commencement of trial."). However, Defendant did not object to the untimely nature of the *Batson* challenge.[1] In light of the importance of a party's right to equal protection, the court considered Plaintiff's *Batson* challenge on the merits. *See Batson v. Kentucky*, 476 U.S. 79, 86 (1986) ("Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure.").

---

[1] By failing to object to Plaintiff's *Batson* challenge in a timely manner, Defendant has waived such an objection. *See Garcia v. Excel Corp.*, 102 F.3d 758 (5th Cir. 1997) (Denying consideration of Defendant's objection that Plaintiff's *Batson* challenge to Defendant's peremptory strikes were untimely because Defendant failed to raise this objection when Plaintiff made its *Batson* challenges and noting, "just as a Batson challenge must be made timely or it will be rejected, an objection to the timeliness of a *Batson* challenge must likewise be made timely or it will be rejected").

3

The *Batson* framework requires a court to follow a three-step process for determining whether peremptory strikes have been applied in a discriminatory manner. *See Batson*, 476 U.S. at 93-98. First, the claimant must make a *prima facie* showing that the peremptory challenges have been exercised on the basis of race. *See id.* Second, if the requisite showing has been made, the burden shifts to the party accused of discrimination to articulate race-neutral explanations for the peremptory. *See id.* Third, the trial court must determine whether the claimant has carried his burden of proving purposeful discrimination. *See id.*

Plaintiff's counsel, Mr. Garrigan, noted that all three struck jurors were African-American and thus made a *prima facie* showing that Defendant exercised its peremptory challenges on the basis of race. Next, the court asked Defendant's counsel to articulate its race-neutral explanations for the three peremptory strikes.

For Juror #1, Defendant's counsel asserted two race-neutral reasons for removing him from the jury: (1) Juror #1 might be unable to focus due to the pain from his disability, which was a topic discussed during his individual voir dire and disclosed on his juror questionnaire; and (2) Juror #1 might be sympathetic toward the Plaintiff because they both had used canes to walk. During Juror #1's individual voir dire, the court explained that jury duty would require Juror #1 to sit continuously for approximately an hour before a 15-minute break. Juror #1 appeared to want to accommodate but still had concerns about his ability to sit continuously for as much as an hour. Further, Juror #1 mentioned that he had not sat still for several years because of his disability and that, other than one recent funeral, jury selection was the longest he had sat without getting up since the onset of his disability. The court found Defendant's first race-neutral explanation credible and that Plaintiff had failed to meet his burden of proving purposeful discrimination.

For Juror #10, Defendant's counsel also proffered two race-neutral explanations: (1) During general voir dire, Juror #10 exhibited troubling body language when several jurors raised their hands in response to Defendant counsel's question concerning who had heard racist terminology before; and (2) Juror #10 disclosed on his juror questionnaire that he was an hourly worker at a well-known major corporation with plants in the Eastern District of Texas[2], which had a reputation for not treating their employees well, and thus would be unlikely to remain objective when judging a company like Defendant Lufkin Industries. The court asked for Plaintiff's response. Mr. Garrigan responded that Defendant failed to ask Juror #10 any individual questions and that Defendants could not verify the subjective reasons they provided. The court then asked Mr. Garrigan, who is well familiar with employment litigation in this District, if he disagreed with the characterization of this major corporation as having a "fair amount of problems with complaints about its work practices."[3] Mr. Garrigan only responded that he "didn't know that it's any worse than [Defendant] Lufkin" and did not object otherwise. The court notes that Mr. Garrigan and his firm have been continuously involved in litigation in this court against Lufkin industries since at least 1997, representing many Lufkin employees complaining of wrong doing

---

[2] Although the corporation was mentioned by name during the *Batson* challenge discussion, to protect Juror #10's privacy, the corporation is not named in this Memorandum Opinion.

[3] Given the high number of employment based cases filed in the Lufkin Division against the corporation in the last 15 years, the court could hardly disagree with Defendant's characterization of the corporation's reputation nor find Defendant's reason pretextual on its face. *See Batson*, 476 U.S. at 98 n.21 (noting that "the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility").

by Lufkin Industries.[4] Coming from Mr. Garrigan, "no worse than Lufkin" does not even hint at a disagreement with Defense counsel's evaluation.

A review of the juror questionnaires revealed no other hourly worker or any other worker at the same major corporation so it could not be said Defendant failed to strike a white juror with the characteristic upon which Defense counsel said he relied. As noted, Plaintiff did not attempt to refute Defendense counsel's characterization of the major corporation's reputation. The court found Defendant's second proffered race-neutral reason credible and that Plaintiff failed to meet his burden of proving purposeful discrimination.

For Juror #15, Defendant's counsel asserted that Juror #15 was removed because she indicated on her Juror Questionnaire that she knew a witness that Plaintiff intended to call. The court reviewed Juror #15's Juror Questionnaire and noted that Juror #15 only indicated she *possibly* knew the witness, that Defendant's counsel had failed to ask Juror #15 any individual questions during the general voir dire, and that Defendant's counsel had failed to conduct an individual voir dire of Juror #15 to further explore this concern—despite two opportunities to do so. The court determined that Defendant's race-neutral explanation for removing Juror #15 was pretextual and that Plaintiff had met his burden of proving purposeful discrimination as to Juror #15.

As part of its *Batson* challenge analysis, the court also considered whether Defendant's peremptory strikes showed a pattern that indicated purposeful discrimination. In criminal cases, a pattern is easier to discern because the prosecutor has ten strikes and the defendant has six strikes.

---

[4] *See eg. McClain et al., v. Lufkin Industries, Inc.,* 9:97-CV-063, a class action race discrimination suit filed in 1997 which was finally terminated in 2015, and *Ruffin v. Lufkin Industries*, 9:13cv24, a sexual harassment and retaliation suit filed in 2013.

Three strikes in a civil case is not much of a basis for analysis of a "pattern." Although Defendant's use of all three strikes certainly raised a question, it was not enough, on its own, for the court to discount the race-neutral reasons Defendant asserted for striking Juror #1 and Juror #10. A court may analyze each strike separately and is not required to discount reasons given for some strikes simply because the court finds against the striking party on other strikes. *See eg. United States v. Bentley-Smith*, 2 F.3d 1368, 1376 (5th Cir. 1993).

To remedy the *Batson* violation, Plaintiff suggested replacing the last juror seated with Juror #15. Plaintiff vehemently objected to the proposed solution of expanding the jury to 11 members and seating Juror #15 as the 11th juror. Although the court noted that replacing the last juror with Juror #15 could be disruptive and that declaring a mistrial was an option, both parties objected to declaring a mistrial and ultimately agreed that Juror #15 should replace the last juror seated. Juror #15 replaced the last juror seated and served as the tenth member of the jury.

Accordingly, as stated in the record of court, the court DENIED Plaintiff's *Baston* challenges as to Juror #1 and Juror #10, and GRANTED Plaintiff's *Batson* challenge as to Juror #15.

**So Ordered and Signed**
**Feb 15, 2018**

_____
Ron Clark, United States District Judge